# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA

ANTHONY LEON PUGH, )
)
Plaintiff, )
)
v. ) Case No. 16-CV-363-PJC
)
NANCY A. BERRYHILL,[1] )
Acting Commissioner )
of the Social Security Administration, )
)
Defendant. )

## OPINION AND ORDER

Plaintiff, Anthony Leon Pugh, seeks judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* For the reasons discussed below, the decision of the Commissioner is **REVERSED AND REMANDED**.

### I. Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage

---

[1] Effective January 23, 2017, Nancy A. Berryhill replaced Carolyn W. Colvin as Acting Commissioner of the Social Security Administration and is substituted as defendant in this action pursuant to Federal Rule of Civil Procedure 25(d).

1

in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *see, e.g., Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation and quotation omitted).

Step One requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step Two requires that the claimant establish that she has a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). At Step Three, the claimant's impairments are compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1 ("Listings"). A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the Administrative Law Judge ("ALJ") proceeds to determine the claimant's residual functional capacity ("RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e); see 20 C.F.R. §§ 404.1545, 416.945. At Step Four, the claimant must establish that he does not retain the RFC to perform his past relevant work, if any. *See* 20 C.F.R. § 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account his

age, education, work experience, and RFC, can perform. *See* 20 C.F.R. §§ 404.1566, 416.966. Disability benefits are denied if the Commissioner meets this burden at Step Five. *See* 20 C.F.R. § 404.1520(a)(4)(v), 416.920(a)(4)(v).

Judicial review of the Commissioner's determination is limited in scope to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). "Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Wall*, 561 F.3d at 1052 (quotation and citation omitted). Although the court will not reweigh the evidence, the court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.*

## II. Background

Plaintiff, then a 51-year old male, applied for Title II benefits on April 6, 2011, alleging a disability onset date of April 4, 2007. (R. 160-62). Plaintiff claimed that he was disabled due to multiple back issues, including degenerative disc disease, bulging disc, and two surgeries. (R. 169). Plaintiff's claim for benefits was denied initially on January 24, 2012, and on reconsideration on April 9, 2012. (R. 79-82). Plaintiff then requested a hearing before an administrative law judge ("ALJ"), and the ALJ held the hearing on February 6, 2013. (R. 39-78). The ALJ issued a decision on March 21, 2013, denying benefits. (R. 23-38). The Appeals Council denied review, and plaintiff appealed to the

3

District Court. (R. 1-4, 549-65). United States Magistrate Judge T. Lane Wilson issued a Report and Recommendation, which was adopted by the District Court, to reverse the ALJ's decision and remand the case for further proceedings. (R. 549-65). The Report and Recommendation found that the ALJ erred in evaluating the medical opinion evidence from Dr. Gerald Rana, plaintiff's treating physician. (R. 560-64).

On remand, the ALJ held a hearing on January 13, 2016. (R. 498-547). The ALJ issued a new decision on April 7, 2016, again denying plaintiff benefits. (R. 481-97). The ALJ found that plaintiff was insured through December 31, 2012, and that plaintiff had not engaged in substantial gainful activity since his alleged disability onset date of April 4, 2007. (R. 486). The ALJ noted that plaintiff offered, at the second hearing, to amend his onset date to July 6, 2009, but the ALJ declined to do so.[2] *Id.* The ALJ found that plaintiff had the severe impairment of "lumbar spine Degenerative Disc Disease." *Id.* The ALJ found that plaintiff's impairments of "degenerative disc disease of the cervical spine" and hypertension were non-severe impairments and that plaintiff's alleged impairments of right shoulder pain and migraines were not medically determinable impairments. (R.

---

[2] July 6, 2009, which plaintiff offered as an amended alleged disability onset date, was his fiftieth birthday. This date is significant, as it would place plaintiff into a new age category – "individual approaching advanced age" – as opposed to the category reflected by the April 4, 2007 alleged disability onset date – "younger individual." *See* 20 C.F.R. Subpt. P, App. 2, § 201.00(g) and (h); (R. 160-62). Had the ALJ agreed to amend plaintiff's disability onset date, the ALJ's RFC finding that plaintiff could perform a limited range of sedentary work would result in a finding that plaintiff was disabled under the Medical-Vocational Guidelines unless plaintiff also had a history of skilled or semi-skilled work and retained skills that would be transferable to sedentary work. See 20 C.F.R. § 404, Subpt. P, App. 2, Table No. 1.

486-87). The ALJ found that plaintiff's impairments did not meet or medically equal a listing. (R. 487).

After reviewing plaintiff's testimony and the medical evidence, the ALJ determined that plaintiff retained the RFC to perform a limited range of sedentary work:

> He could perform no lifting or carrying more than 10 pounds occasionally and less than 10 pounds frequently with pushing/pulling limitations consistent with lifting and carrying limitations. He could stand/walk for two hours out of an eight-hour workday; walk for 20-30 minutes at a time; stand for 20-30 minutes at a time; sit for 6-8 hours out of an eight-hour workday for 30-60 minutes at a time. He must be able to change positions but does not need to leave the work station. He can occasionally climb stairs, balance, bend or stoop, kneel, crouch or crawl. He cannot climb ladders, ropes and scaffolding.

*Id.* Plaintiff could not perform his past relevant work, but he did retain some transferable skills from those jobs, including "inspection, quality control, wood working and record keeping." (R. 491). The ALJ found that plaintiff could perform other work, such as a "matrix inspector" (sedentary, semi-skilled work) and "asbestos-shingle inspector" (sedentary semi-skilled work). (R. 492).

### III. Analysis

On appeal, plaintiff argues that the ALJ's RFC findings are not supported by substantial evidence. (Dkt. 15). Plaintiff's argument centers on the ALJ's evaluation of the medical opinion evidence and, as he did in his first appeal, plaintiff challenges the ALJ's treatment of Dr. Rana's opinion. *Id.* Plaintiff argues that the ALJ did not give specific, legitimate reasons for giving little weight to Dr.

5

Rana's opinion. *Id.* Plaintiff contends that the ALJ selectively disregarded evidence of plaintiff's pain from Dr. Rana's opinion and treatment notes that would support a finding of disability and that the ALJ ignored evidence from 2014 and 2015, more than two years after plaintiff's date last insured, which supported Dr. Rana's findings. *Id.* Plaintiff also contends that the ALJ reliance on the agency physician's RFC assessments that plaintiff could perform light work undermine the ALJ's conclusion that plaintiff could only perform sedentary work. *Id.*

### A. Medical Opinion Evidence

The ALJ reviewed Dr. Rana's records as follows.[3] Plaintiff began seeing Dr. Rana in January 2008 for hypertension and low back pain. (R. 488). In February 2009, a nerve conduction study showed abnormal "lower extremity sensory findings." *Id.* In October 2010, Dr. Rana assessed plaintiff with "low back pain, cervical spinal stenosis and common migraine." *Id.* At that time, plaintiff reported that narcotic pain medication relieved his symptoms. *Id.* Plaintiff showed improvement in December 2010. *Id.* In January 2011, plaintiff received injections. *Id.*

Plaintiff complained of continued back pain and insomnia in early 2012. *Id.* Plaintiff had "decreased range of motion of the lumbar and cervical spine" and right shoulder pain. *Id.* X-rays of his shoulder were normal, but x-rays of the cervical spine showed "[m]ild degenerative disk disease of C3 through C5"

---

[3] The Court notes that the ALJ's analysis of Dr. Rana's treatment notes and medical opinion are largely copied from the first Report and Recommendation remanding the case for further proceedings.

and "[m]ultilevel osteoarthritic changes of joints of Luschka." (R. 489). In May 2012, plaintiff reported low back pain was stable. *Id.*

Dr. Rana completed a medical source statement in January 2013. (R. 490). He diagnosed plaintiff with "spinal stenosis, osteoarthritis and polymyalgia." *Id.* Dr. Rana opined that plaintiff "could sit for 20 minutes at a time, stand for two hours at a time, and sit/stand/walk for two hours each in an eight-hour workday." *Id.* Dr. Rana also opined that plaintiff needed the option to change positions as needed. *Id.*

The ALJ gave Dr. Rana's opinion little weight because it was inconsistent with the other medical evidence. *Id.* The ALJ cited two reasons for rejecting the opinion. First, the ALJ found that plaintiff's back pain stabilized with treatment and that medical records after plaintiff's date last insured show that plaintiff has "no muscle or joint pain, no joint stiffness and no swelling." *Id.* The ALJ also cites a treatment note from March 2014, in which plaintiff reported that he was "active" because he "does chores around the house." *Id.* Second, the ALJ found that plaintiff could flex more often than Dr. Rana had indicated in the medical source statement because plaintiff "frequently" sat "with his head in a position of flexion with his head and eyes downward as if looking at something on the table" during the hearing. *Id.*

Ordinarily, a treating physician's opinion is entitled to controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *See also Hackett v. Barnhart*,

7

395 F.3d at 1173-74 (citing *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003)). If the ALJ discounts or rejects a treating physician opinion, he is required to explain his reasoning for so doing. *See Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987) (stating that an ALJ must give specific, legitimate reasons for disregarding a treating physician's opinion); *Thomas v. Barnhart*, 147 F. App'x 755, 760 (10th Cir. 2005) (holding that an ALJ must give "adequate reasons" for rejecting an examining physician's opinion and adopting a non-examining physician's opinion).

The analysis of a treating physician's opinion is sequential. First, the ALJ must determine whether the opinion qualifies for "controlling weight," by determining whether it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and whether it is consistent with the other substantial evidence in the administrative record. *Watkins*, 350 F.3d at 1300. If the answer is "no" to the first part of the inquiry, then the analysis is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. *Id.* "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." *Id.*

However, even if the ALJ finds the treating physician's opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the record, treating physician opinions are still entitled to deference and must be evaluated in

reference to the factors enumerated in 20 C.F.R. § 404.1527. Those factors are as follows:

> (1) the length of the treating relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed, (3) the degree to which the physician's opinion is supported by relevant evidence, (4) consistency between the opinion and the record as a whole, (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1301 (citing *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001)). The ALJ must give good reasons in his decision for the weight he ultimately assigns the opinion. *Id.* (citing 20 C.F.R. § 404.1527(d)(2)). The reasons must be of sufficient specificity to make clear to any subsequent reviewers the weight the adjudicator gave to the treating physician's opinion and the reasons for that weight. *See Anderson v. Astrue*, 319 F. App'x 712, 717 (10th Cir. 2009).

If an ALJ gives great weight to a physician's opinion, the ALJ must adopt all of the restrictions in that opinion or explain his reasons for failing to do so. *Frantz v. Astrue,* 509 F.3d 1299, 1302–03 (10th Cir.2007)). In *Frantz,* the Tenth Circuit remanded the ALJ's decision, in part, because the ALJ accepted some, but not all, limitations from a nonexamining physician after giving that physician's opinion great weight. The Tenth Circuit determined that the ALJ erred because an ALJ must "discuss the uncontroverted evidence not relied upon and significantly probative evidence that is rejected." *Id.* (citing *Clifton v. Chater,* 79 F.3d 1007, 1009–10 (10th Cir.1996)) and referencing *Haga v. Astrue,* 482 F.3d

1205 (10th Cir.2007)). Under *Clifton* and *Haga,* the ALJ should match his residual functional capacity findings to those opinions that are given great or controlling weight unless the ALJ gives specific, legitimate reasons for rejecting portions of those opinions.

Although the ALJ professed to give little weight to Dr. Rana's opinion, he adopted several of the limitations in the medical source statement as part of the RFC findings. The twenty-minute limitation on sitting and the need to change positions at will are both limitations imposed by Dr. Rana. (R. 473, 490). Additionally, although the ALJ does not explain his reasons for limiting plaintiff to walking twenty to thirty minutes at a time, Dr. Rana imposed a similar limitation of walking fifteen minutes at a time. (R. 473).

The ALJ also imposed postural limitations and found that plaintiff could not climb ladders, ropes, or scaffolds but could occasionally climb stairs, balance, bend or stoop, kneel, crouch or crawl. (R. 487). Those limitations are more consistent with Dr. Rana's limitations than with the agency physician's opinions, which the ALJ gave great weight. (R. 378, 421, 474). Dr. Rana found that plaintiff could never stoop, climb ladders, or climb stairs but could occasionally crouch or squat. (R. 474). The agency physicians, however, found that plaintiff could occasionally stoop but could perform all other postural limitations frequently, including climbing stairs, ladders, ropes, and scaffolds. (R. 378, 421).

The Court cannot reconcile the ALJ's RFC, which matches, in many respects, Dr. Rana's opinion, with the ALJ's decision to give little weight to Dr.

Rana's opinion. Adopting many of Dr. Rana's limitations undermines the ALJ's finding that Dr. Rana's limitations are inconsistent with the treatment notes. The ALJ's analysis also presents a dilemma with respect to the Tenth Circuit's rulings in *Frantz* and *Haga*. Although the ALJ did not give great weight to Dr. Rana's opinion, the ALJ's RFC findings give the impression that the ALJ relied heavily on Dr. Rana's opinion. The remainder of the ALJ's analysis does not give the Court a sufficient basis to follow the ALJ's reasoning, resulting in the Court's conclusion that the ALJ did not properly analyze Dr. Rana's opinion. Alternatively, the ALJ's failure to properly analyze the evidence as a whole leaves the Court unable to follow the ALJ's reasoning; therefore, the Court cannot find that the ALJ's RFC findings are supported by substantial evidence.

## Conclusion

For these reasons, the decision of the Commissioner finding plaintiff not disabled is hereby **REVERSED AND REMANDED** for further proceedings.

ENTERED this 29th day of September, 2017.

Paul J. Cleary
United States Magistrate Judge